IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KALIM A.R. MUHAMMAD, etc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0690-WS-B |
| ) | |
| BRENDA BETHEL-MUHAMMAD, et al.,) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on motions to dismiss filed by defendants Experian Credit Reporting Agency ("Experian") and Equifax Credit Reporting Agency Equifax Credit Union ("Equifax"). (Docs. 64, 77).[1] The parties have submitted briefs in support of their respective positions, (Docs. 64, 78, 80, 87, 94, 96), and the motions are ripe for resolution. After careful consideration, the Court concludes that the motions are due to be granted in part and denied in part.

## BACKGROUND

This is the pro se plaintiff's second lawsuit covering essentially the same subject matter. The first[2] was dismissed without prejudice due to the plaintiff's prolonged failure to present a comprehensible complaint compliant with basic pleading requirements, a ruling upheld on appeal. (Docs. 20, 35 & Attachments). The plaintiff commenced this action with a 100-page complaint, (Doc. 1), which fell further beyond the outer bound of

---

[1] The defendants are so named in the amended complaint. The defendants maintain that their legal names are somewhat different, but the amended complaint controls their identification for now.

[2] *Muhammad v. Bethel*, Civil Action No. 10-0086-WS-B ("*Muhammad I*").

[1]

permissible pleadings than any in his original action and which prompted the Court to order an amended complaint.  (Doc. 20).  The plaintiff responded with a 30-page, 25-count amended complaint.  (Doc. 37).  It is this document – the sixth iteration of the complaint over the course of two lawsuits – that is the target of the instant motions to dismiss.

The defendants are:  (1) Brenda Bethel-Muhammad; (2) Lajenna Hatcher; (3) Dallas County Department of Human Resources; (4) Alabama Department of Human Resources; (5) Paul Vaughan Russell; (6) Robert E. Armstrong; (7) Experian; and (8) Equifax.  In general, the amended complaint alleges that the plaintiff and Bethel entered an agreement purporting to require that any disputes regarding their minor daughter be resolved outside of court.  Bethel, represented by Russell, nevertheless filed custody and child support actions in state court, presided over by Armstrong.  Hatcher, a DHR employee, assisted Bethel.  Experian and Equifax (collectively, "the Credit defendants") disseminated negative information from the DHR defendants and/or the court file.

The counts, and the defendants under each, are as follows:

| # | Claim | Defendants |
|---|---|---|
| 1 | Section 1981 and First Amendment | Bethel, Russell, Hatcher |
| 2 | Fourteenth Amendment Due Process | All |
| 3 | Fourth Amendment Right to Privacy | All non-Credit defendants |
| 4 | Fifth Amendment Due Process/ Federal Arbitration Act | All non-Credit defendants |
| 5 | 42 U.S.C. § 2000a-2 | All non-Credit defendants |
| 6 | 18 U.S.C. § 241 | All |
| 7 | 18 U.S.C. § 242 | All non-Credit defendants |
| 8 | 42 U.S.C. § 2000bb-1 | All non-Credit defendants |
| 9 | 42 U.S.C. § 1985(2), (3) | All individual defendants |
| 10 | 18 U.S.C. § 1341 | All |
| 11 | 42 U.S.C. § 1986 | All but State and Dallas DHR |
| 12 | Article 1, Section 10, 14th Amendment | All non-Credit defendants |

| | | |
|---|---|---|
| 13 | 18 U.S.C. § 1512(c)(1), (2) | All |
| 14 | 42 U.S.C. § 2000a | All non-Credit defendants |
| 15 | 40 U.S.C. § 122 | Armstrong |
| 16 | 42 U.S.C. § 1994 | Armstrong |
| 17 | 42 U.S.C. §§ 1985(2), (3), 1986, 5 U.S.C. § 556(d) | All but Russell and Armstrong |
| 18 | Ninth Amendment, 42 U.S.C. § 2000d | All non-Credit defendants |
| 19 | Fifth Amendment, Fourteenth Amendment, 42 U.S.C. §§ 1982, 1983 | All |
| 20 | Article 1, Section 10, 18 U.S.C. § 1001 | All |
| 21 | 18 U.S.C. §§ 1512(d), 1514, 42 U.S.C. §§ 1985(3), 1986 | All |
| 22 | Ala. Code § 12-16-217, 42 U.S.C. §§ 1983, 1985, 1986 | All non-Credit defendants |
| 23 | Canon 1, Alabama Judicial Code of Conduct | All non-Credit defendants |
| 24 | Canon 2, Alabama Judicial Code of Conduct | All non-Credit defendants |
| 25 | Fair Credit Reporting Act | All |

As reflected above, Experian and Equifax are defendants under Counts Two, Six, Ten, Eleven, Thirteen, Seventeen, Nineteen, Twenty, Twenty-One, and Twenty-Five.[3]

---

[3] The plaintiff suggests that Experian and Equifax are also defendants under Counts Three, Five and Twelve. (Doc. 87 at 24, 29-30). They are not. In its order requiring a repleader, the Court instructed the plaintiff, for each count asserted in the amended complaint, to "expressly identify the defendant or defendants as to which the cause of action is asserted." (Doc. 20 at 4). Counts Three and Five by their terms are asserted against "the Defendant [sic] (excluding Equifax and Experian)." (Doc. 37 at 14, 16). Count Twelve asserts that "[w]e believe that Miss Bethel, Miss Hatcher, the State of Alabama DHR, Dallas County DHR, Russell Vaughn [sic] and Mr. Armstrong are at present in violation of the above statute." (*Id*. at 22).

The plaintiff in brief suggests that Experian and Equifax are liable to him for violations of the Fair Debt Collection Practices Act. (Doc. 87 at 23-24). Because no such claim appears in the amended complaint, no such claim is part of this lawsuit.

**DISCUSSION**

The movants argue that various of the ten counts against them fail to satisfy the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  They also urge a number of count-specific arguments.  The Court first sets forth the applicable pleading requirements and the pleaded facts of the amended complaint, then addresses the movants' arguments count by count.

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …."  Fed. R. Civ. P. 8(a)(2).  Rule 8 establishes a regime of "notice pleading."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002).  It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule.  *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...."  *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

The Court bemoaned the original complaint's lack of "[a]n introductory set of numbered paragraphs briefly setting forth – preferably in chronological order – the key facts and events that form the basis of the complaint." (Doc. 20 at 2). The plaintiff nevertheless ignored the Court's instruction that the amended complaint should "provide at the outset no more than a few dozen brief numbered paragraphs setting forth in a coherent, organized fashion the most important facts underlying the plaintiff's claims." (Doc. 20 at 4 (emphasis omitted)).[4] Instead, he has stubbornly insisted on continuing to randomly sprinkle factual and quasi-factual allegations throughout his amended complaint. The following numbered paragraphs collect and organize these isolated allegations. Those specifically referencing the Credit defendants are concentrated in paragraph 16.[5]

---

[4] The plaintiff likewise ignored the Court's admonition in its order dismissing *Muhammad I* that, should he file a new lawsuit, he should "clearly allege in brief numbered paragraphs necessary facts as to what each defendant did." (Doc. 35, Attachment 3).

[5] The amended complaint purports to "reference … the original of this amended complaint and whatever evidence that can be gleaned from 'Muhammad 1.'" (Doc. 37 at 24; *accord id*. at 21, 23, 25-28). That is, the plaintiff purports to incorporate into his amended complaint the 100-page original complaint that has already been ruled legally improper, *plus* (Continued)

[5]

1.  The plaintiff had a daughter by Bethel.  In or before 2009, the plaintiff and Bethel entered an agreement calling for "arbitration in a specific forum of religious elders."[6]  The agreement still holds sway because it contains elements of a private trust

---

untold pages of "evidence" found not in this lawsuit but in its predecessor.  This is legally impermissible.

"A statement in a pleading may be adopted by reference elsewhere … in any other pleading or motion."  Fed. R. Civ. P. 10(c).  Note that the rule allows "statements" to be adopted, not "pleadings."  Courts have routinely required that a pleading invoking incorporation by reference "must specifically identify which portions of the prior pleading are adopted therein."  *Lowden v. William M. Mercer, Inc*., 903 F. Supp. 212, 216 (D. Mass. 1995) (internal quotes omitted); *accord Kolling v. American Power Conversion Corp*., 347 F.3d 11, 17 (1st Cir. 2003); *Shelter Mutual Insurance Co. v. Public Water Supply District No. 7*, 747 F.2d 1195, 1198 (8th Cir. 1984); *Nycomed, Inc. v. Glenmark Generics Ltd*., 2010 WL 1257803 at *4 (E.D.N.Y. 2010); *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 447-48 (E.D. Va. 2009); *In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, 2007 WL 1202544 at *2 n.1 (N.D. Ill. 2007); *Wolfe v. Charter Forest Behavioral Health Systems, Inc*., 185 F.R.D. 225, 230 (W.D. La. 1999).  The plaintiff's sweeping reference to his 100-page complaint represents precisely the "boiler plate 'safety valve,'" *id*., that other courts – and this one – condemn.  *See Park City Water Authority v. North Fork Apartments, L.P*., 2010 WL 5463814 at *4 n.10 (S.D. Ala. 2010).

The plaintiff's attempt to reference material from *Muhammad I* is likewise foreclosed.  *Texas Water Supply Co. v. Reconstruction Finance Corp*., 204 F.2d 190, 196-97 (5th Cir. 1953) ("Rule 10(c) … permits references to pleadings and exhibits in the same case, but there is no rule permitting the adoption of a cross-claim in a separate action in a different court by mere reference."); *accord Constellation Energy Commodities Group Inc. v. Transfield ER Capt Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action."); *Hall v. Tyco International Ltd*., 223 F.R.D. 219, 261 (M.D.N.C. 2004).  The plaintiff's position is even less tenable, since he purports to reference, not the pleadings in *Muhammad I*, but unidentified "evidence" he submitted therein, and Rule 10(c) permits adoption by reference only of pleadings, not of evidence.

In short, the viability of the plaintiff's action is to be measured by his amended complaint, not by the avalanche of other filings with which he has inexcusably flooded the Court and the litigants over the course of two lawsuits.

[6] The plaintiff, citing his asserted privacy rights, has not submitted the agreement.  (Doc. 37 at 11).

and the daughter is legal heir to the agreement.  In or about 2009, Bethel nevertheless filed a custody action and later a child support action in state court.  Russell served as her counsel, and Armstrong was the presiding judge.  (Doc. 37 at 8, 13, 17, 22).

     2.  In or about April 2010, state agents burst in upon the plaintiff's children at school and questioned them at the instigation of Bethel.  (Doc. 37 at 5, 12).

     3.  Hatcher is a DHR employee and assisted Bethel in connection with the two lawsuits, even though she had read the agreement and knew that it prevented resort to the judicial system.  Hatcher is Bethel's first or second cousin, and this created a conflict of interest, but Hatcher agreed with Bethel to proceed in order to help her relative, concealing her conflict in the process.  Bethel and Hatcher agreed not to tell Judge Armstrong about the agreement.  The plaintiff notified Hatcher and various DHR representatives of the agreement and that it precluded the lawsuits, but the DHR defendants persisted.  The DHR defendants are also aware of Hatcher's conflict of interest.  The DHR defendants acted to protect themselves, due to Hatcher's conflict of interest and fraud.  (Doc. 37 at 8-9, 11-13 19, 22-23).

     4.  Russell knew of the arbitration provision because Bethel gave him the agreement, but he concealed the matter of the contract.  In the spring of 2010, Russell engaged in an ex parte conversation with Judge Armstrong.  On or about January 5, 2011, he engaged in another.  (Doc. 37 at 6-7, 12, 23).

     5. Judge Armstrong was made aware of the agreement by the plaintiff, who argued to him on many occasions that the contract precluded his jurisdiction.  However, Judge Armstrong never gave the plaintiff an audience to hear his challenge based on the arbitration agreement, and he never explained how he could exercise jurisdiction in the face of this agreement.  He also failed to make expeditious rulings on the plaintiff's motions asserting violations of his constitutional rights.  Judge Armstrong failed to ensure the making of a true and adequate record (by using a stenographer or making a digital recording).   He also failed to give the plaintiff voice for appeal of any of his decisions.  (Doc. 37 at 6, 12-13, 18-19, 22).

6.  The plaintiff told Hatcher, Russell, Judge Armstrong, and the DHR entities that the agreement was a private matter of religious consequence.  Armstrong was biased against the plaintiff on racial and religious grounds.  (Doc. 37 at 5, 8, 14, 20).

7.  Judge Armstrong was aware he had been sued in *Muhammad I*[7] and thereafter persecuted the plaintiff.  He tried to ensure that the plaintiff be guided into state court, despite his federal claims, knowing he had the best opportunity to kill any legal assertion.  He concealed and tampered with evidence because the plaintiff had sued him in *Muhammad I*.  He presided at a hearing in January 2011 in order to make sure the plaintiff was punished for bringing him under federal scrutiny.  (Doc. 37 at 13-14, 22-23).

8.  After *Muhammad I* was filed, the plaintiff asked Judge Armstrong to recuse himself.  Judge Armstrong later started making threats to pay sums of money, which the plaintiff contested based on his agreement with Bethel.  (Doc. 37 at 18-19).

9.  Bethel claimed the plaintiff owed her thousands of dollars in "back pay," which the plaintiff protested.  This and/or other demands for payment were adverse to the terms of the private agreement.  Russell, Hatcher and Judge Armstrong did not try to prevent Bethel from making this claim.  The plaintiff announced he had audio and video evidence to refute Bethel's claim, but Judge Armstrong fought the plaintiff's efforts to bring this evidence to light.  (Doc. 37 at 5, 17-18).

10.  On and prior to January 5, 2011, the plaintiff objected to Judge Armstrong placing custody of the daughter with Bethel.  The plaintiff noted that he already had two minor daughters in his household.  Judge Armstrong commented that the plaintiff had enough children already and another might be too much.  (Doc. 37 at 18, 23-24).

11.  A hearing was set for January 5, 2011.  The plaintiff filed a motion for continuance, but it was not ruled on.  On or about the same date, Russell engaged in a second ex parte conversation with Judge Armstrong.  At the hearing, Judge Armstrong

---

[7] The Court takes judicial notice that *Muhammad I* was filed on February 22, 2010.

took away the plaintiff's custody rights and sent out an arrest warrant for the plaintiff. Bethel, Hatcher and Russell agreed to this action.  This was the conclusion of a plan by the non-Credit defendants to punish the plaintiff for bringing *Muhammad I*.  (Doc. 37 at 6-7, 16, 19).

12.  Judge Armstrong had recused himself but came back to preside at the January 2011 hearing and then recused himself again days later, never explaining why he was again sitting on the case.  (Doc. 37 at 6, 7, 13, 19, 21).

13.  The plaintiff was detained at some point under a false emergency of Bethel and Russell.  He was later held on grounds of child support, which was spurious in light of the arbitration agreement.  (Doc. 37 at 17).

14.  Since approximately early 2011, the plaintiff has been bombarded with threat letters asking for payments the plaintiff believes he does not owe the state or Bethel. Since approximately early 2010, the plaintiff has been subjected to countless summonses and threats of imprisonment by the state court.  At some point, Hatcher ushered the plaintiff before Judge Armstrong, under threat of jail for contempt, to sign documents for change of custody status and child support.  (Doc. 37 at 5, 15).

15.  The plaintiff was previously in fear of being thrown in jail.  Now, the DHR defendants collect private documents, have the plaintiff report to them, and come to the plaintiff's home under court order to validate that he and his daughters have a decent house in which to live.  (Doc. 37 at 15).

16.  The Credit defendants disseminated erroneous information received from the state defendants and/or court records.  In or about July 2011, the plaintiff sent the Credit defendants cease-and-desist letters and warned them that they were negligent in failing to clean up fraudulent information in his file received from the state and/or court records. The Credit defendants had been previously warned that the information was fraudulent and had been told that Trans Union had eliminated the adverse data after learning the matter was in dispute in federal court for fraudulent attachments.   The plaintiff provided the Credit defendants with federal court documents.  The Credit defendants did not cease

and desist.  The Credit defendants were actively and passively involved in the fraud concerning Bethel's back pay claim.  They lacked the will to clear the plaintiff's name of fraudulent attachment.  As a result of the Credit defendants' conduct, the plaintiff has experienced difficulty securing business and personal loans and has lost business.  (Doc. 37 at 10, 14, 18, 22, 28).

17. In August or September 2011, the plaintiff showed up at a hearing in state court to vent his constitutional claims, but the DHR defendants' lawyer made clear they were not going to show up.  These defendants have repeatedly refused to state their position on the constitutional issues.  (Doc. 37 at 9).

18. In or about November 2011, Russell saw the plaintiff in court and gave him a blood-curdling stare.  In or about November 2011, Russell recanted his legal representation of Bethel.  (Doc. 37 at 11, 12, 19).

19. Judge Pettway has been appointed to take Judge Armstrong's place.  She conducted a hearing on February 2, 2012.  (Doc. 37 at 5, 9).

20. The plaintiff believes that the defendants conspired.   The initial basis of the conspiracy was that Bethel and Hatcher are cousins.  The conspiracy is evidenced at least by Russell's two ex parte conversations with Judge Armstrong.  (Doc. 37 at 6-7, 17).

21. The individual defendants had the ability to abort violations of the plaintiff's rights but lacked the will to do so.  They acted based on nepotism, family and friendly alliances, and religious hegemony.  (Doc. 37 at 21).

22. All the defendants have attacked the plaintiff's property rights and personal financial accounts and creditworthiness by taking property from various accounts.  Damages include loss of custody, impairment of contract, attachment of wages, attachment of accounts, credit downgrade, loss of capital, loss of business, and emotional distress.  None of the defendants have apologized for their behaviors.  (Doc. 37 at 12-13, 19, 22).

 **A.  Count Two.**

Count Two purports to assert a claim for the deprivation of property without due process of law, in violation of the Fourteenth Amendment.  The plaintiff brings the claim, as he must, pursuant to Section 1983.  The movants allegedly violated the Fourteenth Amendment "by the act of disseminating erroneous 'so called evidence' from the State Defendants and from perhaps court records."  (Doc. 37 at 14).

"Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (U.S. 1982).  "The First, Fifth and Fourteenth Amendments do not apply to private parties unless those parties are engaged in an activity deemed to be 'state action.'" *Farese v. Scherer*, 342 F.3d 1223, 1233 n.13 (11th Cir. 2003) (internal quotes omitted).  The movants are private parties so, to avoid dismissal of Count Two, the amended complaint must contain allegations rendering it plausible that the movants were nevertheless engaged in an activity deemed to be state action.

There are three tests for determining whether a private party is engaged in state action.  First is the "public function" test, which "limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state."  Second is the "state compulsion" test, which "limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution."  Third is the "nexus/joint action" test, which "applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003) (internal quotes omitted).  Under any of these tests, "[m]ere approval or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Id*. at 1278 (internal quotes omitted).

The only function being performed by the movants involved creating and disseminating credit ratings, which has never been an exclusively governmental prerogative.  The amended complaint does not allege that the governmental defendants

coerced or significantly encouraged the movants to publish erroneous information about the plaintiff or to fail to correct the information upon request, and it contains no factual allegations that could render such an assertion plausible.

The only factual allegation linking the movants' conduct to the state is that they received erroneous information from the state defendants and, when the plaintiff protested their dissemination of this information, the movants "chose to accept the word of the State defendants, over Federal court documents that were given to them." (Doc. 37 at 14). This allegation plainly does not suggest, plausibly or otherwise, that the state defendants were so interdependent with the movants that they formed a joint enterprise for purposes of the nexus/joint action test. Rather, it denotes only that, faced with conflicting information concerning the existence and/or validity of a debt, the movants decided, on their own, not to accept the plaintiff's version.

The amended complaint notes that Experian and Equifax "are sanctioned by the Federal Government and are to formulate policies that reflect the upholding of Constitutional and statutory principles when it comes to disputes and the false dissemination of information." (Doc. 37 at 14 (citing the Fair Credit Reporting Act)). However, "[s]tate action is not established merely because a private entity receives government funding or is subject to extensive government regulation." *Shell v. Foulkes*, 362 Fed. Appx. 23, 27 (11th Cir. 2010); *accord San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 544 (1987) ("Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government.").

The amended complaint also asserts that the movants "have been active and/or passive in this violation of our rights," as part of a conspiracy concerning Bethel's fraudulent back-pay claim. (Doc. 37 at 17-18). But this is merely a conclusory, non-factual allegation wholly insufficient to satisfy *Twombly* and *Iqbal*. With no factual allegations to render it plausible that the movants were so interdependent with the state

defendants as to form a joint enterprise with them, the assertion cannot rescue the Fourteenth Amendment claim.

For the reasons set forth above, Count Two is due to be dismissed as to Experian and Equifax.

### B. Counts Six, Ten and Thirteen.

These counts assert civil causes of action based on alleged violations of criminal statutes. "We have been quite reluctant to infer a private right of action from a criminal prohibition alone …." *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 190 (1994). While theoretically not impossible, "[c]riminal statutes generally do not provide a private cause of action." *Chen ex rel. V.D. v. Lester*, 364 Fed. Appx. 531, 536 (11th Cir. 2010).

Count Six invokes 18 U.S.C. § 241. Section 241 does not provide a private cause of action. *Chen*, 364 Fed. Appx. at 536.[8]

Count Ten invokes 18 U.S.C. § 1341. Section 1341 does not provide a private cause of action. *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977).[9]

---

[8] *Accord Paletti v. Yellow Jacket Marina, Inc.*, 395 Fed. Appx. 549, 552 n.3 (11th Cir. 2010); *Rodi v. Ventetuolo*, 941 F.2d 22, 29 n.8 (1st Cir. 1991); *Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427 (2nd Cir. 2011); *Watson v. Washington Township of Gloucester County Public School District*, 413 Fed. Appx. 466, 468 (3rd Cir. 2011); *Rorer v. City of Norfolk*, 2000 WL 868189 at *1 n.* (4th Cir. 2000); *Gill v. State of Texas*, 153 Fed. Appx. 261, 262 (5th Cir. 2005); *Franklin v. Henderson*, 15 Fed. Appx. 205, 207 (6th Cir. 2001); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006); *Newcomb v. Ingle*, 827 F.2d 675, 676 n.1 (10th Cir. 1987); *McCray v. Holder*, 391 Fed. Appx. 887, 888 (D.C. Cir. 2010).

[9] *Accord Kashelkar v. Bluestone*, 306 Fed. Appx. 690, 692 (2nd Cir. 2009); *Jones v. TD Bank*, 2012 WL 834252 at *1 (3rd Cir. 2012); *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997); *Kathrein v. McGrath*, 166 Fed. Appx. 858, 863 (7th Cir. 2006); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408-09 (8th Cir. 1999); *Ross v. Orange County Bar Association*, 369 Fed. Appx. 868, 869 (9th Cir. 2010).

Count Thirteen invokes 18 U.S.C. § 1512(c)(1) and (2).  Section 1512 does not provide a private cause of action.  *E.g., Rowland v. Prudential Financial, Inc.*, 362 Fed. Appx. 596, 596-97 (9th Cir. 2010).[10]

For the reasons set forth above, Counts Six, Ten and Thirteen are due to be dismissed as to Experian and Equifax.

### C. Count Seventeen.

Count Seventeen alleges that Experian and Equifax violated Section 1985(2), Section 1985(3), Section 1986, and 5 U.S.C. § 556(d).

Section 1985 requires a conspiracy, and *Twombly* and *Iqbal* require a proper pleading of a conspiracy.  "[W]holly conclusory allegations of conspiracy" must be disregarded.  *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010).  This includes such assertions as that the defendants acted "as part of a common scheme and conspiracy" or that the defendants "agreed to the overall objective of the conspiracy."  *Id.* at 1293.

The amended complaint alleges that "[w]e have credible belief that the Defendants have conspired on this matter singularly and in connection with each other, as well as involving the color of law in support of their misdoings."  (Doc. 37 at 6).  This is a quintessentially conclusory allegation of a conspiracy, and it is inadequate as a matter of law to survive scrutiny under *Twombly* and *Iqbal*.  The only facts to which the amended complaint clearly cites as supporting this conclusory allegation are two ex parte

---

[10] *Accord Lundeen v. Ridge*, 2011 WL 5920899 at *2 (S.D. Ohio 2011); *Roberts v. Choate Construction Co.*, 2011 WL 5006469 at *2 (M.D. Fla. 2011); *Bender v. City of New York*, 2011 WL 4344203 at *2 (S.D.N.Y. 2011); *Parton v. Smoky Mountain Knife Works, Inc.*, 2011 WL 4036959 at *12 (E.D. Tenn. 2011); *Ghost Bear v. South Dakota Department of Corrections*, 2011 WL 3608569 at *2 (D.S.D. 2011); *Davis v. Shinseki*, 2011 WL 382364 at *7 n.10 (M.D. Ala. 2011); *Winston v. Pavlock*, 2011 WL 2731785 at *4 (W.D. Pa. 2011); *Searcy v. Locke*, 2010 WL 3522967 at *11 (E.D. Va. 2010); *Stoyanov v. Winter*, 643 F. Supp. 2d 4, 10 (D.D.C. 2009); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538-39 (D. Del. 2009).

[14]

conversations between Russell and Judge Armstrong, (*id*. at 6-7), incidents that do not remotely implicate Experian and Equifax. Elsewhere, the amended complaint identifies the conspirators as Bethel, Hatcher and Russell, (*id*. at 17), thereby excluding Experian and Equifax.[11]

Liability under Section 1986 requires the existence of a conspiracy under Section 1985, though the defendant need not be a member of the conspiracy. *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). The movants argue that the amended complaint fails to plausibly allege the existence of a conspiracy involving others than themselves, but they offer only the conclusion, void of analysis. (Doc. 64 at 9, 13; Doc. 78 at 13-14). The Court will not fill in the gap on the movants' behalf.

For its part, Experian also argues that the amended complaint fails to address the essential element of a Section 1986 claim that the defendant have the power to prevent the wrongs conspired to be done in violation of Section 1985. (Doc. 64 at 9). Experian has not grappled with the actual allegations of the amended complaint, including those arguably suggesting the movants had the power to foil part of the other defendants' plan simply by not disseminating false information supplied by them. Again, the Court will not construct and support an argument on Experian's behalf.

Equifax notes that Section 556(d) – which addresses hearings concerning federal agency action under the Administrative Procedures Act – "plainly has no application here." (Doc. 78 at 13 n.2). Equifax is correct. *Beerbower v. United States*, 1986 WL 16750 at *2 (6th Cir. 1986) ("Plaintiff's claims under 5 U.S.C. §§ 555 and 556 are clearly frivolous.").

---

[11] The amended complaint asserts that Experian and Equifax have been "active and/or passive in this violation of our rights," (Doc. 37 at 18), but it does not accuse them of being members of a conspiracy. Nor, again, does it provide any facts that could render plausible their membership in a conspiracy.

For the reasons set forth above, Count Seventeen is due to be dismissed as to Experian and Equifax to the extent it relies on 42 U.S.C. §§ 1985(2) and 1985(3) and 5 U.S.C. § 556(d) but not to the extent it relies on 42 U.S.C. § 1986.

### D.  Count Eleven.

Count Eleven alleges that Experian and Equifax violated Section 1986.  The movants' motions fail for the same reasons expressed in Part C.

### E.  Count Nineteen.

Count Nineteen alleges that Experian and Equifax violated Sections 1982 and 1983 in conjunction with the Fifth and Fourteenth Amendments.

As discussed in Part A, the movants cannot be liable under the Fourteenth Amendment because the amended complaint does not plausibly allege that they were engaged in state action.  "The Fourteenth Amendment, and, through it, the First and Fifth Amendments, do not apply to private parties unless those parties are engaged in activity deemed to be 'state action.'"  *National Broadcasting Co. v. Communications Workers of America*, 860 F.2d 1022, 1024 (11th Cir. 1988); *accord Farese*, 342 F.3d at 1233 n.13 (internal quotes omitted).  Thus, the lack of plausibly alleged state action dooms the plaintiff's Fifth Amendment claim against the movants as well.

Although Count Nineteen invokes Section 1983, that statute "by itself does not protect anyone against anything."  *Gonzaga University v. Doe*, 536 U.S. 273, 285 (2002) (internal quotes omitted).  Rather, Section 1983 "merely provides a mechanism for enforcing individual rights secured elsewhere, i.e., rights independently secured by the Constitution and laws of the United States."  *Id.* (internal quotes omitted).  The amended complaint is clear that the plaintiff's constitutional claims are brought "under the provisions of" Section 1983.  (Doc. 37 at 4).  The plaintiff's Fifth and Fourteenth Amendment claims against the movants are barred by gross pleading deficiencies, and

the invocation of Section 1983 can neither rescue those claims nor set forth a claim of its own.

Section 1982 guarantees all citizens the same rights as white citizens with respect to inheriting, purchasing, leasing, selling, holding and conveying real and personal property. Equifax asserts that the amended complaint "makes no allegations regarding real or personal property at any point." (Doc. 78 at 11). As set forth above, however, the amended complaint asserts that the plaintiff's property has been taken, his wages attached and his capital lost, so Equifax's argument cannot be accepted at face value.

Equifax also posits that the plaintiff does not "make any other assertion that, if true, could support a finding that his property rights were infringed." (Doc. 78 at 11). This bald assertion – questionable in light of the allegations set forth above – seeks to shift to the Court the burden of finding a basis for dismissing the claim, something the Court will not do.

For the reasons set forth above, Count Nineteen is due to be dismissed as to Experian and Equifax to the extent it relies on the Fifth and Fourteenth Amendments but not to the extent it relies on 42 U.S.C. § 1982.

### F. Count Twenty.

Count Twenty alleges that Experian and Equifax violated Article 1, Section 10 of the Constitution in conjunction with 18 U.S.C. § 1001.

Section 1001 is a criminal statute that does not provide a private cause of action. *E.g., Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).[12]

---

[12] *Accord Slewion v. Venema*, 418 Fed. Appx. 127, 128 (3rd Cir. 2011); *Federal Savings and Loan Insurance Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987); *Stevens v. Jefferson*, 421 Fed. Appx. 639, 640 (7th Cir. 2011); *Willems v. Apartment Investment and Management Co.*, 72 Fed. Appx. 700, 700 (9th Cir. 2000); *Fuller v. Unknown Officials*, 387 Fed. Appx. 3, 3 (D.C. Cir. 2010).

As noted, the plaintiff brings his constitutional claims through the vehicle of Section 1983. That statute provides a remedy only against those who act "under color of law." "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family*, 344 F.3d at 1277.

The "color of law" requirement can be satisfied under any of the three tests for state action discussed in Part A. *E.g., Brown v. Lewis*, 361 Fed. Appx. 51, 54 (11th Cir. 2010). As discussed in that section, the amended complaint contains no plausible allegations satisfying any of those tests. A conspiracy between the movants and the state defendants would do the trick, *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002), but, as discussed in Part C, the amended complaint does not plausibly allege such a conspiracy.

For the reasons set forth above, Count Twenty is due to be dismissed as to Experian and Equifax.

### G. Count Twenty-One.

Count Twenty-One alleges that Experian and Equifax violated Section 1985(3), Section 1986, and 18 U.S.C. §§ 1512(d) and 1514.

The Section 1985(3) aspect of this claim fails, and the Section 1986 aspect of the claim survives, for reasons set forth in Part C.

Section 1512(d) is a criminal statute that does not provide a private cause of action. *E.g., Rowland*, 362 Fed. Appx. at 596-97; *see also* cases cited n.9, *supra*.

As Equifax notes, (Doc. 78 at 8), Section 1514 merely allows the attorney for the government to seek a temporary restraining order ("TRO") prohibiting harassment of a victim or witness in a federal criminal proceeding. There is no criminal proceeding here and no request by a government lawyer for a TRO. There is thus no possibility for relief under this statute.

For the reasons set forth above, Count Twenty-One is due to be dismissed as to Experian and Equifax to the extent it relies on 42 U.S.C. § 1985(3) and 18 U.S.C. §§ 1512(d) and 1514, but not to the extent it relies on 42 U.S.C. § 1986.

### H. Count Twenty-Five.

Count Twenty-Five alleges that Experian and Equifax violated 15 U.S.C. § 1681s-2. That statute "imposes certain responsibilities on persons who furnish information to consumer reporting agencies." *Chipka v. Bank of America*, 355 Fed. Appx. 380, 383 (11th Cir. 2009). Experian and Equifax, however, are not furnishers of information to consumer reporting agencies and so are not potentially subject to suit under that section. On the contrary, and as the amended complaint expressly alleges, they are "credit reporting agenc[ies]," (Doc. 37 at 3), the entities to whom "furnishers" present information. Section 1681s-2 provides no right of action against such agencies but only against the furnishers. *E.g., Sampson v. Washington Mutual Bank*, 453 Fed. Appx. 863, 867 (11th Cir. 2011).

For the reasons set forth above, Count Twenty-Five is due to be dismissed as to Experian and Equifax.

### CONCLUSION

For the reasons set forth above, the motions to dismiss filed by Experian and Equifax are **granted** in full with respect to Counts Two, Six, Ten, Thirteen, Twenty and Twenty-Five. As to Count Eleven, the motions are **denied** in full. As to Counts Seventeen and Twenty-One, the motions are **denied** with respect to the Section 1986 aspect and granted in all other respects. As to Count Nineteen, the motions are **denied** with respect to the Section 1982 aspect and granted in all other respects.

As to Experian and Equifax: Counts Two, Six, Ten, Thirteen, Twenty and Twenty-Five are **dismissed with prejudice** in their entirety; Count Seventeen is **dismissed with prejudice** to the extent it relies on 42 U.S.C. § 1985(2), 42 U.S.C.

[19]

§ 1985(3), or 5 U.S.C. § 556(d); Count Nineteen is **dismissed with prejudice** to the extent it relies on the Fifth or Fourteenth Amendment; and Count Twenty-One is **dismissed with prejudice** to the extent it relies on 42 U.S.C. § 1985(3), 18 U.S.C. § 1512(d) or 18 U.S.C. § 1514.

The only claims remaining against Experian and Equifax are the following: Count Eleven (Section 1986); Count Seventeen (Section 1986); Count Nineteen (Section 1982); and Count Twenty-One (Section 1986).

DONE and ORDERED this 21st day of May, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

[20]