IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KALIM A.R. MUHAMMAD, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0690-WS-B |
| | ) |
| BRENDA BETHEL-MUHAMMAD, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on a motion for summary judgment filed by defendant Robert Armstrong. (Doc. 208). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 209, 215, 227, 229), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion for summary judgment is due to be granted.

**BACKGROUND**

This is the pro se plaintiff's second lawsuit covering essentially the same subject matter.[1] The defendants are: (1) Brenda Bethel-Muhammad ("Bethel"); (2) Lajenna Hatcher; (3) Dallas County Department of Human Resources ("Dallas DHR"); (4) Alabama Department of Human Resources ("State DHR");[2] (5) Judge Armstrong; (6) Paul Vaughan Russell; (7) Equifax Credit Reporting Agency ("Equifax"); and (8) Experian Credit Reporting Agency ("Experian"). In general, the amended complaint,

---

[1] The first was dismissed without prejudice due to the plaintiff's prolonged failure to present a comprehensible complaint compliant with basic pleading requirements, a ruling upheld on appeal. (Docs. 20, 35 and attachments). *Muhammad v. Bethel*, Civil Action No.10-0086-WS-B ("*Muhammad I*").

[2] The State and Dallas County DHR are referred to herein collectively as "the DHR defendants."

(Doc. 37), alleges that the plaintiff and Bethel entered an agreement purporting to require that any disputes regarding their minor daughter be resolved by a religious tribunal. Bethel, represented by Russell, nevertheless filed custody and child support actions in state court, presided over by Judge Armstrong. Hatcher, a DHR employee, assisted Bethel. Experian and Equifax (collectively, "the Credit defendants") disseminated negative information from the DHR defendants and/or the court file.

The counts, and the defendants under each, are as follows:

| # | Claim | Defendants |
|---|---|---|
| 1 | Section 1981 and First Amendment | Bethel, Russell, Hatcher |
| 2 | Fourteenth Amendment Due Process | All |
| 3 | Fourth Amendment Right to Privacy | All non-Credit defendants |
| 4 | Fifth Amendment Due Process/ Federal Arbitration Act ("FAA") | All non-Credit defendants |
| 5 | 42 U.S.C. § 2000a-2 | All non-Credit defendants |
| 6 | 18 U.S.C. § 241 | All |
| 7 | 18 U.S.C. § 242 | All non-Credit defendants |
| 8 | 42 U.S.C. § 2000bb-1 | All non-Credit defendants |
| 9 | 42 U.S.C. § 1985(2), (3) | All individual defendants |
| 10 | 18 U.S.C. § 1341 | All |
| 11 | 42 U.S.C. § 1986 | All but State and Dallas DHR |
| 12 | Article 1, Section 10, 14th Amendment | All non-Credit defendants |
| 13 | 18 U.S.C. § 1512(c)(1), (2) | All |
| 14 | 42 U.S.C. § 2000a | All non-Credit defendants |
| 15 | 40 U.S.C. § 122 | Armstrong |
| 16 | 42 U.S.C. § 1994 | Armstrong |
| 17 | 42 U.S.C. §§ 1985(2), (3), 1986, 5 U.S.C. § 556(d) | All but Russell and Armstrong |
| 18 | Ninth Amendment, 42 U.S.C. § 2000d | All non-Credit defendants |
| 19 | Fifth Amendment, Fourteenth Amendment, | All |

|    |                                              |                           |
|----|----------------------------------------------|---------------------------|
|    | 42 U.S.C. §§ 1982, 1983                      |                           |
| 20 | Article 1, Section 10, 18 U.S.C. § 1001      | All                       |
| 21 | 18 U.S.C. §§ 1512(d), 1514,                  |                           |
|    | 42 U.S.C. §§ 1985(3), 1986                   | All                       |
| 22 | Ala. Code § 12-16-217,                       | All non-Credit defendants |
|    | 42 U.S.C. §§ 1983, 1985, 1986                |                           |
| 23 | Canon 1, Alabama Canons of Judicial Ethics   | All non-Credit defendants |
| 24 | Canon 2, Alabama Canons of Judicial Ethics   | All non-Credit defendants |
| 25 | Fair Credit Reporting Act ("FCRA")           | All                       |

Judge Armstrong is thus a defendant under all counts except Counts One and Seventeen. Judge Armstrong previously pursued a motion to dismiss, (Doc. 57), which the Court granted in part. (Doc. 106).[3] The Court dismissed Counts Two, Three, Nine, Eleven and Twelve on the grounds of absolute judicial immunity and Eleventh Amendment immunity. (*Id*. at 21). The Court also dismissed portions of Counts Four, Eighteen, Nineteen, Twenty, Twenty-One and Twenty-Two on the same basis. (*Id*.).[4] Judge Armstrong now seeks summary judgment as to all remaining counts.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials

---

[3] *Muhammad v. Bethel-Muhammad*, 2012 WL 1854564 (S.D. Ala. 2012).

[4] The Court's order also lists Count Twenty-Three as being dismissed in part on this basis, (Doc. 106 at 21), but this is in error.

3

on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*.

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[5]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.[6]

## I. Judicial Immunity.

Judge Armstrong first re-asserts his judicial immunity argument.  (Doc. 209 at 5-9).  In its previous order, the Court concluded that the amended complaint alleges no action by Judge Armstrong that was not taken in his judicial capacity.  (Doc. 106 at 4-6).  The Court further concluded that Judge Armstrong did not act in the clear absence of all jurisdiction and that the amended complaint contains no suggestion to the contrary.  (*Id*. at 6-8).  The Court therefore concluded that Judge Armstrong is entitled to judicial immunity to the extent that immunity has not been legislatively abrogated.  (*Id*. at 9).  As to all of the plaintiff's constitutional claims (which were brought against Judge Armstrong pursuant to Section 1983), and as to all claims under Sections 1985 and 1986, appellate authority established that judicial immunity has not been legislatively abrogated.  The Court accordingly ruled that all such claims are subject to judicial immunity, and the Court dismissed all counts and portions of counts resting on these provisions.  (*Id*.).  Because Judge Armstrong did not otherwise address abrogation, the Court was unable to dismiss additional portions of the amended complaint on immunity grounds.  (*Id*. at 9-10).

On motion for summary judgment, Judge Armstrong merely repeats his previous argument concerning judicial immunity, focusing on points the Court has already

---

[5] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

[6] The plaintiff purports to "incorporate" all "previously filed exhibits of record …, as well as the briefs, discovery matter and other evidence from discovery and summary judgment stage." (Doc. 227 at 30).  As the discussion in text makes clear, his mere saying so places none of this material before the Court, and the Court declines to consider it.

5

accepted but ignoring the abrogation issue. However, it has been pointed out to the Court that Section 1982 does not abrogate the states' sovereign immunity as reflected in the Eleventh Amendment. (Doc. 203 at 23).[7] Because abrogation of Eleventh Amendment immunity requires "unmistakable language in the statute itself," *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243 (1985), and because abrogation of judicial immunity similarly requires "clear legislative intent," *Pulliam v. Allen,* 466 U.S. 522, 529 (1984), it may be safely concluded that Section 1982 does not abrogate judicial immunity. Certainly the plaintiff offers no argument to the contrary.

He does, however, ask the Court to revisit its determination that Judge Armstrong satisfies the elements of judicial immunity. (Doc. 227 at 29). As the Court has pointed out, "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). The plaintiff does not question the first of these elements, but he does assert that Judge Armstrong lacked jurisdiction. (Doc. 227 at 5, 7, 10-11, 14, 21, 22, 28).

The Court repeats what it wrote in its order on Judge Armstrong's motion to dismiss:

> Judge Armstrong is thus entitled to judicial immunity unless he acted "in the clear absence of all jurisdiction." *Bolin*, 225 F.3d at 1239. The relevant jurisdiction is "jurisdiction over the subject matter." *Stump*, 435 U.S. at 357; *accord Dykes*, 746 F.2d at 943 ("We … reassert the common law doctrine that a judge enjoys absolute immunity where he or she had subject matter jurisdiction over the matter forming the basis

---

[7] *Tariq-Shuaib v. City of Camden*, 2011 WL 383857 at *3 (D.N.J. 2011); *Shaughnessy v. Hawai'i*, 2010 WL 2573355 at *5 (D. Haw. 2010); *Friends of Eudora Public School District v. Beebe*, 2008 WL 828360 at *3 (E.D. Ark. 2008); *Powers v. CSX Transportation, Inc.*, 105 F. Supp. 2d 1295, 1303-04 (S.D. Ala. 2000); *Ross v. State of Alabama*, 893 F. Supp. 1545, 1551 (M.D. Ala. 1995).

6

> for such liability.").[8]  Immunity is lost only by an utter, obvious lack of jurisdiction; if jurisdiction existed and Judge Armstrong merely exceeded that jurisdiction, he remains immune. *Id*.  Indeed, even if subject matter jurisdiction was actually lacking but the jurisdictional question is colorable, his immunity is unbroken.[9]
>
> Subject matter jurisdiction turns on the authority provided the judge by statute or other proper governmental dispensation.  So long as state law provides him subject matter jurisdiction to hear a case of the sort entertained (or, more precisely, so long as state law does not clearly rule out such jurisdiction), then for purposes of immunity a judge does not act in the clear absence of all jurisdiction.  *E.g., Stump*, 435 U.S. at 357-59 (where statute provided the defendant judge jurisdiction to hear "all cases in law and equity whatsoever," he had subject matter jurisdiction over a juvenile sterilization petition, even though state and federal law might prohibit such sterilization); *Scott*, 719 F.2d at 1566-67 (where Alabama statutes granted circuit judges jurisdiction to hear "all civil cases" generally and divorce cases in particular, subject matter jurisdiction existed even though the judge "egregiously erred" in suggesting a vasectomy in exchange for a favorable property settlement).
>
> Judge Armstrong is district court judge of Dallas County, sitting as juvenile judge as Alabama law permits.  Ala. Code §§ 12-12-34, 12-15-103(a).  The cases involved child custody and support – subjects that countless Alabama cases confirm lie properly within the subject matter jurisdiction of juvenile judges.  The plaintiff does not suggest otherwise.

(Doc. 106 at 6-7).

In opposing Judge Armstrong's motion to dismiss, the plaintiff offered only two arguments as to how the judge acted without jurisdiction: (1) that a private agreement between the plaintiff and Bethel required non-judicial arbitration of disputes over custody

---

[8] The plaintiff relies on the panel opinion in *Dykes* for the proposition that an absence of personal jurisdiction is enough to defeat judicial immunity. (Doc. 55 at 10).  The en banc opinion in *Dykes*, which controls, held exactly the opposite.  776 F.2d at 943, 949-50.

[9] *E.g., Hughes v. Long*, 242 F.3d 121, 125 (3rd Cir. 2001); *Ireland v. Tunis*, 113 F.3d 1435, 1444 (6th Cir. 1997); *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990); *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990).  This lenient rule is necessary because judges must determine their own jurisdiction in the first instance, and even the best will sometimes wrongly conclude that jurisdiction exists – a legal error that should not expose the judge to personal liability.  Thus, "[b]ecause some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, … the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356.

and support; and (2) that jurisdiction was barred by the Fourteenth Amendment "'and the down to earth clear and God guided conscious [sic] of the sense of justice and fair play.'" (Doc. 106 at 7-8) (quoting Doc. 65 at 20)). As the Court explained, arbitration agreements do not deprive a court of subject matter jurisdiction, and neither vague references to the Constitution nor expressions of moral outrage do anything to alter that jurisprudential fact. (*Id.*).

The plaintiff now invokes other grounds. First, he argues that Judge Armstrong never had jurisdiction because his connections with Russell created a conflict of interest which, undisclosed, violated the Due Process Clause. (Doc. 227 at 5, 10-11, 22). The assertion is legally meritless, since "[t]he Supreme Court has established that an accusation of a conflict of interest does not trump a claim of absolute [judicial] immunity." *Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006).[10]

Second, the plaintiff argues that Judge Armstrong, once he recused himself, was without jurisdiction to re-appear and render rulings. (Doc. 227 at 7, 14-15, 22). It is plain that a judge's denial of a recusal motion is protected by judicial immunity.[11] Whether a judge's grant of a recusal motion divests him of all jurisdiction for purposes of the judicial immunity analysis is a question of state law,[12] and the plaintiff has identified no authority for the proposition that recusal strips a judge of subject matter jurisdiction. The Alabama appellate courts have indicated that, while a state judge, having recused himself, should not appoint his successor, his successor does not lack jurisdiction based

---

[10] *Accord Jallali v. Florida*, 404 Fed. Appx. 455, 456 (11th Cir. 2010); *Zahl v. Kosovsky*, 2011 WL 779784 at *9 (S.D.N.Y. 2011) ("The failure of a judge to recuse herself in light of a conflict of interest does not deprive her of all jurisdiction to try the case before her, so as to deprive her of judicial immunity …."), *aff'd*, 471 F.3d 23 (2nd Cir. 2012); *Sylvester v. Sorrell*, 2009 WL 819383 at *3 (D. Vt. 2009); *Wall v. Wall*, 2009 WL 3110208 at *4 n.8 (M.D. Ala. 2009).

[11] *E.g., Cox v. Mills*, 465 Fed. Appx. 885, 887 (11th Cir. 2012); *Shapiro v. Ingram*, 207 Fed. Appx. 938, 940 (11th Cir. 2006); *Jenkins v. Dresnick*, 147 Fed. Appx. 67, 68-69 (11th Cir. 2005).

[12] *Sibley v. Lando*, 437 F.3d, 1067, 1069-72 (11th Cir. 2005).

on the impropriety. *See Hornady Truck Lines, Inc. v. Howard*, 985 So. 2d 469, 475-77 (Ala. Civ. App. 2007) (collecting and discussing cases). There is thus at least a colorable argument that, even if Judge Armstrong's return to the case was improper, any such impropriety did not preclude him from having subject matter jurisdiction over the case. As explained above, a colorable argument is all that Judge Armstrong needs to retain his judicial immunity.

The Court also notes the plaintiff's failure to present evidence that Judge Armstrong in fact recused himself and then returned to the same case. The plaintiff has submitted the docket sheets from the child support case, the related contempt/rule nisi proceedings, and the separate custody case. (Doc. 54 at 11-18). They reflect that the plaintiff filed a recusal motion in the custody case on September 22, 2010, that Judge Armstrong promptly recused himself, and that he never re-appeared in that case. (*Id*. at 17-18). They also reflect that the plaintiff did not file a recusal motion in the support/contempt case until February 10, 2011. (*Id*. at 14). Judge Armstrong's filings reflect that he promptly recused himself, (Doc. 209, Exhibit E), and the docket sheet reflects that he never re-appeared in that case. (Doc. 54 at 14-15).[13]

Finally, the plaintiff admits that his arguments do not implicate Judge Armstrong's subject matter jurisdiction. (Doc. 228 at 6). Since only subject matter jurisdiction matters, his admission is fatal.

In summary, the plaintiff cannot undo the judicial immunity awarded Judge Armstrong in the Court's previous order. In addition, Judge Armstrong is entitled to judicial immunity as to the plaintiff's Section 1982 claim under Count Nineteen, which is the last remaining portion of that count.[14]

---

[13] The plaintiff's complaint is that Judge Armstrong entered a ruling in the contempt proceedings in January 2011 after having recused himself. (Doc. 37 at 13, 19, 22). It is clear that the plaintiff is conflating the separate cases, incorrectly assuming that Judge Armstrong's September 2010 recusal in the custody case effected his recusal in the support/contempt case.

[14] As noted in the Court's previous order, judicial immunity does not bar prospective injunctive relief against a judicial officer. (Doc. 106 at 10). However, as also noted, the amended complaint does not demand injunctive relief of Judge Armstrong. (*Id*. at 10 & n.13).

**II. Qualified Immunity.**

Judge Armstrong next re-asserts the qualified immunity argument he raised unsuccessfully on motion to dismiss. (Doc. 209 at 9-11).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. ... If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id*. On motion to dismiss, Judge Armstrong skipped this critical first step of the analysis, dooming his motion. (Doc. 106 at 14). On motion for summary judgment, he remedies that omission.

For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotes omitted). That is, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The first prong of this test requires that the defendant "have been performing a function that, but for the alleged unconstitutional infirmity, would have fallen within his legitimate job description." *Holloman*, 370 F.3d at 1266 (emphasis omitted). "The

inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert International*, 157 F.3d at 1282 (internal quotes omitted).[15]

As for the second prong, "[e]ach government employee is given only a certain 'arsenal' of powers with which to accomplish her goals." *Holloman*, 370 F.3d at 1267. "Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity." *Id*.

"[A] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (internal quotes omitted). "[A] government official can prove he acted within the scope of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (internal quotes omitted). The Court must "interpre[t] the evidence in the light most favorable to the plaintiff." *Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010). The quantum and quality of evidence necessary to meet the defendant's burden "vary in proportion to the degree of discretion inherent in the defendant's office," *Harbert*, 157 F.3d at 1282 (internal quotes omitted), but ordinarily "there must be a showing by competent summary judgment materials of objective circumstances that would compel th[e] conclusion" that the defendant acted within his discretionary authority. *Id*. (internal quotes omitted). Certainly "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice" to meet the defendant's burden of proof. *Id*. (internal quotes omitted).

---

[15] For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners. *Harbert*, 157 F.3d at 1282 (describing *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

The plaintiff's case against Judge Armstrong is governed by his amended complaint, which identifies the allegations against him as follows:

- Judge Armstrong for two years "subjected [the plaintiff] to abuse of process by not giving hearing to our motions, not trying the facts and giving weight to our evidence."  (Doc. 37 at 5).
- Judge Armstrong "fail[ed] to insure the making of a true and adequate record and making expeditious rulings on motions that announced our infringing of Constitutional rights."  (*Id*. at 6).
- Judge Armstrong "sent out an arrest warrant and altered the custody rights of the Plaintiff(s)."  (*Id*.).
- Judge Armstrong engaged in "ex parte talks" with Russell.  (*Id*. at 7).
- Judge Armstrong sat "to oversee the custody and contractual rights of the Plaintiff(s), but knowing full well that a motion for continuance was issued to the Court and all concerned, as well as the fact that we were all under the expectations of a new judge."  (*Id*.).
- Judge Armstrong "failed to give us voice for any appeal of any of his decisions and failed to heed our constitutional issues, as well as failed to make an adequate record of what was said in the court."  (*Id*. at 13).
- After recusing himself, Judge Armstrong came back on the case "without warning and without any proper notification to us of Judicial Ethics oversight or approval of his doing so."  (*Id*.).
- "On or about January 5, 2011, Mr. Armstrong [and other defendants] showed up to the Dallas County Court … to conclude a plan to punish us for bringing on litigation in the Federal Courts against them."  (*Id*. at 16).
- Judge Armstrong never "tried to prevent Miss Bethel from making this stupendous claim of so called 'back pay' for a year back."  (*Id*. at 17).

- "Mr. Armstrong has continued to fight us in bringing forth evidence to refute Miss Bethel's claim, by being the gate keeper to stop our evidence from ever being discovered."  (*Id*. at 18).

- Judge Armstrong "also made a comment that the Plaintiff (in proper) had enough children and should just leave the daughter in question to the custody of Miss Bethel." (*Id*.).

- After being sued by the plaintiff in this Court, Judge Armstrong "started making threats to pay sums of money that we had contested that we did not owe." (*Id*.).

- "The Judge never once gave us proper jurisdiction quotes and neither did he pen this to the record for us to use." (*Id*. at 19).

- On January 5, 2011, Judge Armstrong made "a legal pronouncement to take away the custody rights and to insure that [the plaintiff] was put in jail, so that he would not bother the Defendants." (*Id*.).

- Judge Armstrong "then recue [sic] himself again – within days." (*Id*.).

- Judge Armstrong "tried to insure that we be guided into the State arena, in spite of Federal claims, knowing he had the best opportunity to kill any and almost every legal assertion."  (*Id*. at 22).

- Judge Armstrong "under friendly alliance 'concealed' and tampered with the evidence because we were prosecuting him in federal court and we believe he wanted us to be under his scrutiny in only the Dallas County Court." (*Id*. at 23).

It is plain from this listing that every action by Judge Armstrong (and every failure by him to act) of which the plaintiff complains occurred in the context of the support/contempt and custody proceedings.  Judge Armstrong is district court judge of Dallas County, sitting as juvenile judge as Alabama law permits.  Ala. Code §§ 12-12-34, 12-15-103(a).  As Judge Armstrong points out, (Doc. 209 at 9-11), he had authority to preside over these matters and to issue rulings therein.  As to all his alleged conduct, he

was thus "performing a function that, but for the alleged unconstitutional infirmity, would have fallen within his legitimate job description."  *Holloman*, 370 F.3d at 1266 (emphasis omitted).  The first prong of the discretionary-authority analysis is therefore satisfied.

As to the second prong, most of the conduct of which the plaintiff complains involves powers or means that all judicial officers possess for use in the performance of their judicial duties.  Conducting or not conducting hearings, giving or not giving weight to particular evidence,[16] granting or denying motions, making or not making a record, ruling swiftly or slowly, accepting or rejecting arguments, admitting or excluding particular evidence, granting or denying discovery, making comments from the bench,[17] and resolving the support, contempt and custody matters committed to his jurisdiction all fall within this category.

Other conduct was undertaken pursuant to specific legal grants of authority, and other omissions did not violate any requirement to act.  Judge Armstrong issued a warrant for the plaintiff's arrest after finding the plaintiff in contempt for non-payment of judicially ordered child support, and state law permitted him to incarcerate the plaintiff on such grounds.  (Doc. 209, Exhibit D).  The plaintiff apparently attempted to insert federal issues into the contempt proceedings, (Doc. 54 at 13-14), but the power and burden to remove the case to federal court on this basis (if removal could properly be had) lay with the plaintiff, not Judge Armstrong.  28 U.S.C. § 1441(a).

This leaves for discussion only two allegations:  (1) that Judge Armstrong engaged in ex parte conversations with Russell; and (2) that, after recusing himself, he came back on the case.  Judge Armstrong offers no argument or authority for the proposition that such conduct falls within the "arsenal of powers" given him to accomplish his job-related goals.  But it is uncontroverted that Judge Armstrong did neither of these things.  As

---

[16] This includes Judge Armstrong's alleged "conceal[ment]" of and "tamper[ing]" with evidence, which consists of his not considering or crediting the plaintiff's alleged contract with Bethel to have issues concerning their daughter resolved in a religious, non-judicial forum. (Doc. 37 at 23).

[17] This includes Judge Armstrong's alleged "threats," which merely addressed the plaintiff's arrearages in the payment of child support.  (Doc. 37 at 18-19).

noted in Part I, Judge Armstrong did not "re-appear" in a case after recusing himself; instead, he recused in one case and continued to sit on the other until requested to step aside. And both Judge Armstrong and Russell have testified under oath that they engaged in no ex parte conversation regarding the plaintiff's legal matters, (Doc. 209, Exhibit A at 2; Doc. 225 at 25), an assertion the plaintiff has failed to controvert with evidence to the contrary.[18]

Judge Armstrong has thus carried his threshold burden. The burden now shifts to the plaintiff to show that Judge Armstrong's conduct "violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry may be broken down into two parts: (1) whether the facts alleged, if true, would establish a violation of the plaintiff's rights; and (2) whether those rights were clearly established at the time of the alleged deprivation. *Id.* Assuming without deciding that the plaintiff could meet the first prong of this test, he has not satisfied the second.

To be clearly established, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The plaintiff has not coherently addressed his exacting burden of showing that pre-existing law dictates the conclusion that any similarly situated jurist in Judge Armstrong's position would have known that what he was doing violated federal law

---

[18] The plaintiff stresses that Judge Armstrong and Russell have social connections, that they formerly attended the same house of worship, and that – some twenty years ago – they worked in the same law office. None of this is evidence that they engaged in ex parte conversations concerning the plaintiff's legal matters.

15

under the circumstances presented.  Because the burden is on the plaintiff, his failure is necessarily fatal, and Judge Armstrong is entitled to qualified immunity.

"Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."  *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995).  As the Court has already determined, (Doc. 106 at 10 & n.13), the amended complaint seeks only damages from Judge Armstrong.  Qualified immunity thus provides Judge Armstrong a complete defense to all of the plaintiff's federal claims.  Judge Armstrong is entitled to summary judgment on this basis with respect to Counts Two through Sixteen, Eighteen through Twenty-One, and Twenty-Five.

## III.  State Claims.

Qualified immunity is not applicable to state claims,[19] and Judge Armstrong invokes no analogue under state law.  Nor, as discussed in the Court's ruling on his motion to dismiss, (Doc. 106 at 10 n.11), has Judge Armstrong demonstrated that the federal doctrine of judicial immunity applies to state law claims.

Count Twenty-Two alleges that Judge Armstrong violated Section 12-16-217 of the Alabama Code.  (Doc. 37 at 26-27).  That provision prohibits only the obstructing of grand jury witnesses or the coercion of false (or withheld true) testimony before a grand jury.  As Judge Armstrong points out, (Doc. 209 at 20-21), this case does not remotely implicate grand jury witnesses or testimony.  The plaintiff offers no argument to the contrary.  Judge Armstrong is entitled to summary judgment with respect to Count Twenty-Two.

Counts Twenty-Three and Twenty-Four allege that Judge Armstrong violated the Alabama Canons of Judicial Ethics.  (Doc. 37 at 27-28).  Judge Armstrong responds that no private cause of action exists for violation of these rules.  (Doc. 209 at 21-23).  The

---

[19] *Heggs v. Grant*, 73 F.3d 317, 319 n.5 (11th Cir. 1996); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).

Court agrees.[20]  Judge Armstrong is entitled to summary judgment with respect to Counts Twenty-Three and Twenty-Four.

**IV.  Particular Federal Claims.**

Judge Armstrong and other defendants address the merits of many of the plaintiff's federal claims.  The Court does likewise.

    **A.  Claims Addressed in Other Orders.**

For reasons set forth in Parts II, III, IV, V and VII of the Court's order granting the DHR defendants' motion for summary judgment, Judge Armstrong is entitled to summary judgment with respect to Counts Five, Six, Seven, Eight, Ten, Thirteen, Fourteen and Eighteen and to those portions of Counts Four, Twenty and Twenty-One addressed in that order.

    **B.  Sex Discrimination.**

"With respect to a program or activity carried on or receiving federal assistance under this subtitle, an individual may not be excluded from participation, denied benefits, or otherwise discriminated against based on sex."  40 U.S.C. § 122.  Count Fifteen alleges that Judge Armstrong violated this statute.  (Doc. 37 at 23-24).  The subtitle to which Section 122 belongs, however, applies only to programs and activities concerning the acquisition, use and disposition of federal property.  *See* 40 U.S.C. § 101 (describing the subtitle's purpose).  Judge Armstrong patently was not involved in any such program or activity, and the plaintiff identifies no evidence to the contrary.  Accordingly, Judge Armstrong is entitled to summary judgment with respect to Count Fifteen.

---

[20] *Weeks v. Houston*, 2013 WL 386518 at *7 n.33 (Alaska 2013); *Fagan v. United States District Court*, 644 F. Supp. 2d 441, 450 (S.D.N.Y. 2009); *In re: Bell*, 962 So. 2d 537, 543 (Miss. 2007); *Howell v. Hecht*, 821 S.W.2d 627, 632 (Tex. App. 1991).

### C. Peonage.

"The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited …." 42 U.S.C. § 1994. Count Sixteen alleges that Judge Armstrong reduced the plaintiff to peonage by issuing a warrant for his arrest in connection with the contempt proceedings. (Doc. 37 at 24).

"Peonage is a condition of compulsory service, based upon the indebtedness of the peon to the master. … [P]eonage, however created, is compulsory service, involuntary servitude." *United States v. Reynolds*, 235 U.S. 133, 144 (1914) (internal quotes omitted). Section 1994 explicitly limits its reach to compulsory "service or labor." The amended complaint, however, does not allege that the plaintiff was forced to perform labor, only that he was "imprison[ed]." (Doc. 37 at 24). Nor has the plaintiff identified any record evidence that he was reduced to compulsory service. Without such allegation and evidence, the plaintiff cannot sustain a claim for peonage. Accordingly, Judge Armstrong is entitled to summary judgment with respect to Count Sixteen.

### D. Fair Credit Reporting Act.

Count Twenty-Five alleges that Judge Armstrong violated 42 U.S.C. § 1681s-2, which imposes requirements on "furnishers of information to consumer reporting agencies." As Judge Armstrong points out, (Doc. 209 at 19), the plaintiff has identified no evidence that Judge Armstrong, as opposed to the DHR defendants, furnished the Credit defendants (or any other consumer reporting agency) any information concerning the plaintiff. Without such evidence, this claim necessarily fails, and Judge Armstrong is entitled to summary judgment with respect to Count Twenty-Five.

### V. Official Capacity.

Judge Armstrong is sued in his official capacity as well as in his individual capacity. (Doc. 37 at 2). As discussed in Parts III and IV, Judge Armstrong is entitled to

summary judgment as to many claims on their merits, which rulings necessarily extend to both his individual and his official capacities.  As to other claims, however, Judge Armstrong has received relief based only on judicial and qualified immunity, doctrines that protect him from individual liability but not official liability.  *E.g., Bruce v. Beary*, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007) (qualified immunity); *Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996) (judicial immunity).

As noted in Parts I and II, the amended complaint demands only damages from Judge Armstrong, not declaratory or injunctive relief.  An award of damages against Judge Armstrong in his official capacity may be barred by the Eleventh Amendment.  *Simmons*, 86 F.3d at 1084, 1086 (an award of damages against an Alabama judge in his official capacity in a suit brought under Section 1983 is precluded by the Eleventh Amendment).

The Court has previously held that Judge Armstrong in his official capacity is shielded by Eleventh Amendment immunity as to all of the plaintiff's constitutional claims, which are brought pursuant to Section 1983.  (Doc. 106 at 11).  The Court has acknowledged in Part I of this order that Eleventh Amendment protection also extends to any claim under Section 1982.  Finally, in Part I of its order granting the DHR defendants' motion for summary judgment, the Court has determined that the plaintiff's claims under Sections 1985 and 1986 are likewise precluded by the Eleventh Amendment.[21]

Because every one of the 23 counts against Judge Armstrong has been dismissed on the merits and/or is subject to Eleventh Amendment immunity, Judge Armstrong in his official capacity cannot be held liable in damages.  He is therefore entitled to summary judgment as to all claims against him in his official capacity.

---

[21] The Section 1986 claim alleged in Count Eleven is asserted against Judge Armstrong only "in his 'personal' capacity."  (Doc. 37 at 21).  There can thus be no official capacity liability under Count Eleven.

## CONCLUSION

For the reasons set forth above, Judge Armstrong's motion for summary judgment is **granted**.

All claims against Judge Armstrong in his individual capacity are **dismissed with prejudice**.

All claims against Judge Armstrong in his official capacity under Counts Five through Eight, Ten, Eleven, Thirteen through Sixteen, and Twenty-Three through Twenty-Five are **dismissed with prejudice**.

All claims against Judge Armstrong in his official capacity under Counts Four, Eighteen and Twenty through Twenty-Two asserting violations of the FAA, 42 U.S.C. § 2000(d), 18 U.S.C. §§ 1001, 1512(d) and 1514 or Ala. Code § 12-16-217, are **dismissed with prejudice**.

All other claims against Judge Armstrong in his official capacity, which assert violations of the Constitution, Section 1982, Section 1983, Section 1985 or Section 1986, are barred from suit in federal court (but not state court) by the Eleventh Amendment and thus are **dismissed without prejudice**.[22]

Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 7th day of October, 2013.

                                            s/ WILLIAM H. STEELE
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[22] "Eleventh Amendment immunity protects the state and arms of the state from suit *only* in federal court." *Abusaid v. Hillsborough County Board of County Commissioners*, 405 F.3d 1298, 1306 n.5 (11th Cir. 2005) (emphasis in original); *accord Kimel v. State Board of Regents*, 139 F.3d 1426, 1429 n.4 (11th Cir. 1998).